# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3457

_____

M.Y., by and through her parents,       *
J.Y. and D.Y.,       *
       *
       Appellant,       *    Appeal from the United States
       *    District Court for the District
       v.       *    of Minnesota.
       *
Special School District No. 1,       *
Minneapolis Public Schools; and       *
Adbihakim Mohamed Isse,       *
       *
       Appellees.       *

_____

Submitted: June 13, 2008
Filed: October 14, 2008

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and PIERSOL[1], District Judge.

_____

PIERSOL, District Judge.

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

Plaintiffs, J.Y. and D.Y, parents of M.Y. ("Parents"), appeal the district court's[2] decision granting summary judgment in favor of Defendant, Special School District No. 1, Minneapolis Public Schools ("District"), on Parents' claims alleging violations of section 504 of the Rehabilitation Act of 1973 ("section 504"), 29 U.S.C. § 794 (2000), and 42 U.S.C. § 1983 (2000) ("§ 1983"). We affirm.

## BACKGROUND AND RELATED FACTS

Parents of M.Y., a 15-year-old disabled girl, sued District for damages arising from a sexual assault allegedly perpetrated against M.Y. by her bus driver, Isse, while being transported home from summer school at W. Harry Davis Academy. In their Complaint, Parents assert eleven different claims arising under the common law, the United States Constitution, and various other federal and state statutes. The district court granted summary judgment in favor of District on all of Parents' claims.

M.Y. is a student with a disability under the Individuals with Disabilities Act Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et. seq.* (2000), section 504, and related state law. As a result of her disabilities, M.Y. qualified for and had been attending the special education program offered by District since September 1998. Each school year, in accordance with the requirements of the IDEA, Parents met with teachers and other administrators to develop an individualized education program ("IEP") for M.Y. which included a written statement of M.Y.'s present educational level, annual goals and short-term instructional objectives, and specific educational services to be provided to M.Y. M.Y.'s 2003/2004 IEP stated that one of the educational services to be provided to her was curb-to-curb transportation on a special education bus with an accompanying educational assistant. Despite being ineligible to receive extended

---

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

school year ("ESY") services,[3] District provided M.Y. with special education transportation beginning in the Summer of 2003 and continuing each summer thereafter until the Summer of 2005.

On May 12, 2005, Parents met with education staff at W. Harry Davis to discuss M.Y.'s IEP for the 2005/2006 school year. The resulting IEP stated that once again, M.Y. was ineligible to receive ESY and related services. However, the IEP stated that during the school year, District would continue to provide M.Y. with curb-to-curb transportation on a special education bus, but omitted the provision of a one-to-one educational aide on the school bus. The IEP further provided that M.Y. would be required to use general education transportation when traveling to and from a "general education activity such as a field trip or dance." M.Y.'s parents made no objection to the IEP's provisions and signed their approval on May 18, 2008.

On Saturday, June 18, 2005, Parents received a postcard from District stating that M.Y. would be required to use general education transportation for summer school beginning on Monday, June 20, 2005. The general education transportation did not guarantee a bus driver that would be specially trained in the needs and sensitivities of children with disabilities and would pick up and drop off M.Y. about a half block from her home.

Isse was assigned to the route that took M.Y. home after her 2005 summer school classes. Since the time Isse was hired by District on August 24, 2000, District had received no complaints regarding Isse from either students or parents. As part of

---

[3] ESY services are defined as special education and related services that– (1) Are provided to a child with a disability–(i) Beyond the normal school year of the public agency; (ii) In accordance with the child's IEP; and (iii) At no cost to the parents of the child; and (2) Meet the standards of the SEA. 34 C.F.R. 300.106(b) (2007). Summer school and related services qualify as ESY services.

District's hiring process, Isse successfully completed a drug screen and criminal background check.

When M.Y. was returning home from summer school on June 23, 2005, Isse allegedly engaged in inappropriate sexual conduct with M.Y. approximately two blocks from M.Y.'s assigned bus stop and a departure of several blocks from the normal route. Parents filed a complaint with the Minneapolis Police Department and District's Department of Transportation Services promptly filed a Maltreatment of Minors report with the Minnesota Department of Education.

District suspended Isse with pay effective Monday, June 27, 2005, pending the outcome of the investigation. On October 25, 2005, District's Board of Education approved the Superintendent's recommendation to suspend Isse without pay effective September 30, 2005. On July 5, 2006, following its investigation into M.Y.'s complaint, the Minnesota Department of Education issued a determination that there was a preponderance of the evidence to show that Isse had sexually abused M.Y. Following this determination, District terminated Isse's employment.

On appeal, Parents contest the district court's decision to grant summary judgment as to certain claims contained in their Complaint. Specifically, Parents contend that the district court erred in dismissing their claims arising under section 504 and § 1983.

STANDARD OF REVIEW

We review *de novo* a district court's grant or denial of summary judgment. *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC,* 519 F.3d 466, 471 (8th Cir. 2008). Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c);
*Id.*

DISCUSSION

The claim by Parents that the district court erred in concluding that they were required to exhaust administrative remedies in order to recover under section 504 or § 1983, is misinformed.  The IDEA exhaustion requirement applies to claims brought under section 504 or other federal statutes only to the extent that those claims seek relief that is also available under the IDEA.  20 U.S.C. § 1415(l).  Despite Parents' vigorous assertions to the contrary, the district court clearly stated that Parents were not required to exhaust administrative remedies under the IDEA since the statute's administrative procedures and remedies were only designed to address prospective educational benefits and not the past injuries that M.Y. suffered from the sexual assault.  The Court will therefore review *de novo* the district court's decision as it relates to the merits of Parents' section 504 and § 1983 claims.

## I.     Section 504 Claims

To state a *prima facie* case under section 504, a plaintiff must show that he or she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability.  *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999).  Additionally, a plaintiff must show that the discrimination reflected bad faith or gross misjudgment.  *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982).

The district court dismissed Parents' section 504 claim on the basis that there was no evidence in the record that District's actions discriminated on the basis of M.Y.'s disability.  Even if District's actions were discriminatory, the district court

-5-

further held that the actions were not undertaken in bad faith or with gross misjudgment.

A.    <u>Discrimination on the basis of disability</u>

Parents' Complaint appears to advance two different theories of disability discrimination under section 504. First, Parents contend that District's transportation program of allegedly denying special education transportation to and from summer school to students who are not eligible for ESY services, effectively denied M.Y. a free and appropriate public education ("FAPE") because the program failed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons. Second, Parents claim that failing to provide M.Y. a reasonable accommodation of special education transportation deprived her of meaningful access to summer school.

*i.    Denial of free and appropriate education*

The regulations implementing the Rehabilitation Act provide that a recipient of federal funds that operates a public elementary or secondary education program or activity "shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. 104.33(a) (2007). These regulations define an appropriate education as:

> the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

34 C.F.R. 104.33(b)(1).

Furthermore, the regulations provide that "[i]mplementation of an Individualized Education Program" developed in accordance with the IDEA is one means of providing a free appropriate public education under section 504. 34 C.F.R. 104.33(b)(2).

Overall, the Court concludes that District's decision not to provide M.Y. special education transportation to and from summer school did not have the effect of denying her a free and appropriate public education because this action was in accordance with the terms of M.Y.'s IEP. The regulations detailing the actions districts must take in order to receive federal financial assistance under the IDEA state that ESY services must be provided "only if a child's IEP Team determines, on an individual basis . . . that the services are necessary for the provision of [a free appropriate public education] to the child." 34 C.F.R. 300.106(a)(2). In the present case, M.Y.'s IEP team specifically agreed that M.Y. was not eligible for ESY services which, under the statute, included related services such as transportation. *See* 34 C.F.R. 300.106(b). Accordingly, denying M.Y., a non-ESY eligible student, special education transportation to and from summer school did not have the effect of denying her a free and appropriate public education under section 504.

### ii. *Failure to provide a reasonable accommodation*

Parents contend that failing to provide M.Y. with a reasonable accommodation of special education transportation constituted disability discrimination because it had the effect of denying her meaningful access to summer school. Likening the present case , as Parents do in their brief, to that of a hearing-impaired student who is denied an interpreter during summer school because the student is ineligible to receive ESY services, implies that the latter case is unquestionably actionable under section 504. The Eighth Circuit, however, has not held one way or the other on whether a failure to provide a reasonable accommodation may constitute discrimination on the basis of one's disability under section 504. *See Davis v. Francis Howell Sch. Dist.,* 138 F.3d 754, 757 (8th Cir. 1998) (stating that "[t]his court has not determined whether the

failure to make reasonable modifications in a policy is itself discrimination even where the policy and its rationale cannot be shown to be discriminatory."); *see also Timothy H.,* 178 F.3d at 972-73 (discussing *Davis*); *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.,* 126 F.3d 1102, 1106 (8th Cir. 1997).

We need not address this issue at the present time since we find that District lacked the requisite intent to be liable under section 504.

B.      Intent Requirement

In order to state a claim under section 504 in the context of education of handicapped children, Parents must show that District acted in bad faith or with gross misjudgment by departing substantially from "accepted professional judgment, practice or standards as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment."  *Monahan,* 687 F.2d at 1170-71 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982)) (footnote omitted).  This reflects the notion expressed by the court in *Monahan*, that in limiting liability to discrimination "solely by reason of ... handicap," Congress did not intend to create general tort liability for reasonable decisions made by professionals in the educational context.  *Id.*

There is no evidence in the record that District possessed the requisite bad faith or gross misjudgment in denying M.Y. special education transportation.  District's decision fully complied with the terms of M.Y.'s IEP which stated that M.Y. was not eligible for ESY and related services such as transportation.

Accordingly, we affirm the district court's decision granting summary judgment in favor of District on the basis that District did not possess the requisite intent in order to be liable under section 504.

## II.    Section 1983 Claim

To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official "policy or custom" and that such "policy of custom" was the moving force behind plaintiff's injury. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978).

Parents argue that District is liable under § 1983 under two different theories. First, Parents contend that District had a custom or policy of denying special education transportation to and from summer school to students who did not qualify for ESY services. In the alternative, Parents argue that District maintained a custom or policy of failing to train or supervise its employees with respect to the provision of special education transportation.

The Court concludes that the district court was correct in granting summary judgment against Parents as to their § 1983 claims. The Court finds no evidence in the record that District maintained any customs or policies such as those suggested by Parents. While District argues in its memorandum in support of its motion for summary judgment that it may not be liable under section 504 for failing to provide M.Y. special education transportation to and from summer school because such services are not necessary to give her a free and appropriate education under the IDEA, such an argument is insufficient evidence of a custom or policy denying all non-ESY eligible students this service. The Court agrees with District that the record contains no written District policies pertaining to summer school transportation and is completely devoid of any evidence regarding how other students with disabilities are transported to and from summer school.

For the foregoing reasons, we affirm the judgment of the district court.

_____